IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JERRY ROBINSON                                               PLAINTIFF

v.                         CIVIL NO. 15-5225

CAROLYN W. COLVIN, Commissioner
Social Security Administration                               DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Jerry Robinson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff protectively filed his current application for DIB on March 23, 2013, alleging an inability to work since September 7, 2012, due to anxiety, depression, diabetes, Hepatitis C, hypertension, and anal bleeding. (Doc. 12, p. 23, 67, 145). An administrative video hearing was held on July 22, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 12, pp. 33-67).

By written decision dated November 7, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Doc. 12, p. 19). Specifically, the ALJ found Plaintiff had the following severe impairments: a

1

musculoskeletal disorder (osteoarthritis and associated disorder, degenerative joint disease), a digestive disorder (chronic liver disease, hepatitis C), an endocrine disorder (diabetes mellitus), a cardiovascular disorder (hypertension), and obesity. (Doc. 12, p. 19). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 12, p. 22). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except as following (sic): The claimant can frequently lift and/or carry ten pounds and occasionally twenty pounds, sit for a total of six hours in an eight hour workday, and stand and/or walk for a total of six hours in an eight hour workday. The claimant can occasionally climb ramps or stars (sic), balance, stoop, kneel, crouch, and crawl. The claimant can occasionally climb ladders, ropes or scaffolds.

(Doc. 12, p. 22). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a file clerk, a bill collector, and a household appliance assembler. (Doc. 12, p. 27).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence submitted by Plaintiff, denied that request on July 24, 2015. (Doc. 12, pp. 5-10). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 9, 11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Evidence Presented:**

At the time of the administrative video hearing on July 22, 2014, Plaintiff was fifty-two years of age and had obtained an eleventh grade formal education. (Doc. 12, p. 39).

2

Plaintiff testified that he had earned his GED, and had attended Vo-tech classes. (Doc. 12, pp. 39-40).

The pertinent medical evidence in this case reflects the following. On September 27, 2012, Plaintiff was seen by Dr. John A. Huskins for a follow up appointment. (Doc. 12, p. 282). Dr. Huskins noted Plaintiff had multiple medical problems which included elevated lipids, elevated liver function tests, and elevated blood sugar in the past. Plaintiff was noted to have chronic neck and back pain. Dr. Huskins discussed his medical problems and work up and referral options.

On October 17, 2012, Plaintiff was seen by Dr. Huskins for a follow up appointment. (Doc. 12, pp. 269-270). Dr. Huskins noted Plaintiff was on medication for neck and back pain, and for elevated blood sugar and blood pressure. Dr. Huskins noted that a recent pre-employment exam showed that Plaintiff's sugar was elevated. Upon examination, Dr. Huskins noted Plaintiff's chest was clear and his heart exhibited a normal rate without murmur. Dr. Huskins noted he discussed Plaintiff's cardiovascular, "knee plastic screen," and end organ damage with Plaintiff.

On December 20, 2012, Plaintiff was seen by Dr. Huskins to discuss lab results. (Doc. 12, pp. 271). Plaintiff reported his sugars had been low at home so he ate candy. Dr. Huskins told Plaintiff to eat complex carbohydrates if his sugar was low. Routine health care was discussed with Plaintiff.

On March 20, 2013, Plaintiff reported that he was driving a truck and had experienced blurred vision. (Doc. 12, pp. 272-273). Dr. Huskins noted Plaintiff had troubling controlling

his blood sugars.  Dr. Huskins discussed the risks of being on chronic narcotics with Plaintiff.  Dr. Huskins recommended Plaintiff diet and exercise, and that he avoid tobacco.

On June 18, 2013, Plaintiff underwent a consultative mental diagnostic evaluation performed by Dr. Mary J. Sonntag.  (Doc. 12, pp. 283-287).  When asked what mental limitations kept him from working, Plaintiff reported that he had no energy and that he was depressed.  Plaintiff reported that he went to school to obtain his CDL, but once he was behind the big rig he could not do the work.  Plaintiff reported that he was depressed because he had acne, and that he was a felon, but he reported he had not been in trouble for over ten years.  Plaintiff reported that he took Alprazolam that was prescribed by Dr. Huskins, and that he suffered no side effects and believed it helped.  Plaintiff reported that he could perform activities of daily living without assistance.  Plaintiff reported he was able to get along "alright" with coworkers and supervisors.  Plaintiff reported he was terminated from his last job in February of 2013, after only working two weeks.  Plaintiff said he was terminated because of his diabetes.  Dr. Sonntag noted no pain indications during the evaluation.

With respect to Plaintiff's adaptive functioning, Plaintiff reported he could drive unfamiliar routes, shop independently, and handle finances.  Plaintiff reported he was capable of performing activities of daily living independently.  Dr. Sonntag opined that Plaintiff was able to cope with typical mental/cognitive demands of basic work-like tasks; to attend and sustain concentration on basic tasks; to sustain persistence in completing tasks; and to complete work-like tasks within an acceptable time frame.

On June 20, 2013, Plaintiff was seen by Dr. Huskins.  (Doc. 12, pp. 307-308).  Dr. Huskins noted Plaintiff came in for a medication refill.  Dr. Huskins noted that Plaintiff was

cutting down or stopping smoking. Upon examination, Plaintiff was noted to have symmetrical extremities and low back pain.

On July 8, 2013, Plaintiff underwent a consultative general physical examination performed by Dr. Robert Karas. (Doc. 12, pp. 290-295). Plaintiff reported that he experienced anxiety and that he was scared of new things. Plaintiff also reported experiencing depression. Plaintiff reported that his right knee popped out of place, and that he experienced left shoulder pain every once in a while. Upon examination, with the exception of pain with flexion of the left knee, Plaintiff was noted to have normal range of motion in his spine and extremities. Upon a limb function test, Plaintiff was able to hold a pen and write; to touch fingertips to palm; to oppose thumb to fingers; to pick up a coin; to stand/walk without an assistive device; to walk on heel and toes; and to squat/arise from a squatting position. Plaintiff was also noted to have one hundred percent grip strength bilaterally. Dr. Karas opined that Plaintiff had mild to moderate limitations with walking and carrying.

On August 22, 2013, Plaintiff was seen by Dr. Huskins due to his diabetes. (Doc. 12, pp. 309-310). Dr. Huskins noted Plaintiff had chronic pain and that he took narcotics. Dr. Huskins discussed targets, routine health care, and smoking cessation with Plaintiff.

On September 19, 2013, Plaintiff was seen by Dr. Huskins for a medication refill. (Doc. 12, pp. 320-321). Plaintiff reported some anxiety and depression. Dr. Huskins noted Plaintiff's report of neck and back pain. Plaintiff reported that he continued to smoke. Plaintiff was noted as being overweight. Dr. Huskins discussed routine health care, targets, and medication risks and benefits with Plaintiff.

On October 17, 2013, Plaintiff was seen by Dr. Huskins for a medication refill. (Doc. 12, pp. 322-323). Plaintiff reported that he continued to smoke. Plaintiff reported some swelling in his abdomen and elevated blood sugar. Upon examination, Dr. Huskins noted Plaintiff had a ventral hernia, and paraspinous muscle spasm of the cervical, thoracic and lumbar spine.

On November 18, 2013, Plaintiff was seen by Dr. Huskins for a medication refill. (Doc. 12, pp. 324-325). Dr. Huskins noted Plaintiff took chronic pain and high blood pressure medications. Dr. Huskins noted that he discussed routine health care and referral options with Plaintiff. Plaintiff was noted as being a "bit overweight."

On December 17, 2013, Plaintiff was seen by Dr. Huskins for a medication refill. (Doc. 12, pp. 326-327). Dr. Huskins noted Plaintiff was taking narcotics for neck and back pain. Dr. Huskins noted Plaintiff had experienced recurrent cystic infections on his face, neck and buttocks. Upon examination, Dr. Huskins noted Plaintiff had a pilonidal cyst with purulent drainage. Plaintiff also exhibited decreased range of motion in the cervical, thoracic, and lumbar spine.

On January 14, 2014, Plaintiff was seen by Dr. Huskins for a medication refill. (Doc. 12, pp. 328-329). Dr. Huskins noted Plaintiff was doing "fairly well" on his medications. Drainage from a pilonidal cyst was noted. Plaintiff was noted to have a history of tobacco abuse. Dr. Huskins discussed routine health care, targets, skin care, and chronic narcotics with Plaintiff.

On February 13, 2014, Plaintiff was seen by Dr. Huskins for a medication refill. (Doc. 12, pp. 330-331). Plaintiff was noted to have neck and back pain. Dr. Huskins noted that Plaintiff was trying to find work. Plaintiff reported trouble with his vision.

On March 13, 2014, Plaintiff was seen by Dr. Huskins for a follow up appointment. (Doc. 12, pp. 332-333). Dr. Huskins noted Plaintiff had been on chronic pain medication for neck and back pain. Dr. Huskins noted that they would discuss tapering of the medication. Plaintiff's hypertension and blood sugar were noted as being under fair control with medication. Dr. Huskins noted Plaintiff had chronic acne. Dr. Huskins discussed routine health care, current medications, targets, referral options and end-organ damage with Plaintiff.

On April 14, 2014, Plaintiff was seen by Dr. Huskins for a medication refill. (Doc. 12, pp. 334-335). Plaintiff reported that he planned to move to California but was waiting to sell his house. Dr. Huskins discussed his medications, and routine health care with Plaintiff.

On May 6, 2014, Plaintiff was seen by Dr. Huskins for a follow up appointment. (Doc. 12, pp. 336-343). Dr. Huskins noted Plaintiff's history of tobacco abuse, and chronic neck and back pain. Dr. Huskins noted that he would be referring Plaintiff to a gastroenterologist.

On July 14, 2014, Dr. Huskins completed a Medical Source Statement-Physical opining that Plaintiff could frequently and occasionally lift and carry ten pounds; stand and/or walk for a total of two hours in an eight-hour workday; sit for a total of three hours in an eight-hour workday; and occasionally climb, balance, stoop, reach, handle and finger, but never kneel, crouch or crawl. (Doc. 12, pp. 344-345). Dr. Huskins indicated that these limitations were due to Plaintiff's chronic pain, chronic narcotics, and fatigue. Dr. Huskins indicated that these

limitations started on September 30, 2012, and continued through the date the statement was completed.

On August 14, 2014, Plaintiff underwent a liver biopsy that indicated Hepatitis C. (Doc. 12, pp. 347-349).

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

8

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

**IV.   Discussion:**

Plaintiff argues in his appeal that the ALJ failed to consider all of the relevant evidence when determining Plaintiff's RFC.

**A.   Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies

9

appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record reveals that in April of 2013, Plaintiff completed a Function Report indicating that he was able to take care of his personal needs, to feed and water his pet, to prepare simple meals, to do his laundry; to mow and do household repairs with breaks; to drive; and to spend his time watching television or reading. (Doc. 12, pp. 203-210). Plaintiff indicated that he was able to lift twenty pounds, but could only walk two hundred feet due to knee pain. Plaintiff indicated that his conditions affected his ability to lift, climb stairs, kneel, see, and walk. In June of 2013, Plaintiff reported to Dr. Sonntag that he was able to perform activities of daily living independently; that he could drive unfamiliar routes; that he could shop independently; and that he could handle finances. Plaintiff's mother also indicated that Plaintiff was able to do chores around the house that included mowing the lawn and household repairs. (Doc. 12, pp. 185-194).

With respect to Plaintiff's alleged mental impairments, the record failed to demonstrate that Plaintiff sought on-going and consistent treatment from a mental health professional during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). After reviewing the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff did not have a disabling mental impairment.

Therefore, although it is clear that Plaintiff suffered with some degree of limitation, he did not establish that he was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible for the time period in question.

### B. ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (citations omitted). An ALJ may discount such an opinion if other medical assessments are supported

11

by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

After reviewing the entire record, the Court finds that Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision. The Court notes that in determining Plaintiff's RFC, the ALJ specifically discussed the relevant medical records, and the medical opinions of treating, examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

With regard to the Medical Source Statement-Physical (Medical Source Statement) completed by Dr. Huskins, Plaintiff argues that the ALJ did not give this opinion proper weight. In July of 2014, Dr. Huskins opined that Plaintiff was capable of lifting and carrying no more than ten pounds, sitting for a total of three hours in an eight-hour day, and standing and/or walking for a total of only two hours in an eight-hour day. In giving Dr. Huskins opinion "little weight," the ALJ noted that there was no objective testing to support the limitations set forth in Dr. Huskins Medical Source Statement. The ALJ also found that Dr. Huskins treatment notes did not support the level of limitation indicated in the Medical Source Statement. Perkins v. Astrue, 648 F.3d 892, 899 (8th Cir. 2011) (it is permissible for ALJ to discount opinion that

is inconsistent with physician's own treatment notes). For example, a review of Dr. Huskins treatment notes revealed fairly benign findings which included only a few notations of muscle spasm or decreased range of motion of the spine. Dr. Huskins never restricted Plaintiff from performing any activities during the time period in question.

The record also included an examination performed by Dr. Karas wherein, with the exception of pain with flexion of the left knee, Plaintiff exhibited normal range of motion of the spine and extremities. Dr. Karas also indicated that Plaintiff was able to hold a pen and write; to touch fingertips to palm; to oppose thumb to fingers; to pick up a coin; to stand/walk without an assistive device; to walk on heel and toes; and to squat/arise from a squatting position. In addition, the Court notes Plaintiff completed a Function Report indicating that he was able to lift twenty pounds, and did not include any limitation in his ability to stand, sit, concentrate, understand, reach, bend or use his hands. After reviewing the record, the Court finds substantial evidence supports the ALJ's decision to give Dr. Huskins opinion little weight.

The Court acknowledges that the ALJ's decision included language that appears to be inconsistent with his determination that Dr. Huskins opinion should be given little weight. The ALJ's decision included the following language:

> As for the opinion evidence, the opinions of claimant's examining and treating physicians are given substantial weight consistent with 20 CFR 404.1527. Consideration is given to the length of the treating relationship and the medical specialty of the treating physician with regard to opinions expressed about the claimant's medical conditions and functional limitations.

(Doc. 12, p. 26). The Court agrees with Defendant that this language was included in error, and was harmless. As discussed above, the Court finds the ALJ adequately set forth the basis for giving Dr. Huskins opinion little weight.

13

The ALJ also took Plaintiff's obesity into account when determining that Plaintiff could perform light work with limitations. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal). After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

### C.     Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a file clerk, a bill collector, and a household appliance assembler. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V.     Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of January, 2017.

                                                   /s/ *Erin L. Setser*
                                                HON. ERIN L. SETSER
                                                UNITED STATES MAGISTRATE JUDGE